[No. 2895.   May 11, 1926.]

BONNER v. OTTO.

[246 Pac. 902.]

### SYLLABUS BY THE COURT

1. Vendor, in a contract for sale of cattle, having secured a modification of the contract as to time and place of delivery, and having defaulted in such delivery, cannot put the vendee in default by tendering delivery thereafter under the original terms.

---

[1] 35Cyc p. 126 n. 50

Appeal from District Court, Union County; Leib, Judge.

Action by A. Q. Bonner, doing business under the name of Bonner & Co., against Christian Otto. From a judgment for plaintiff, defendant appeals. Affirmed.

Hugh B. Woodward, of Clayton, for appellant.

Joseph Gill, of Albuquerque, for appellee.

OPINON OF THE COURT

WATSON, J.    [1]   Appellee (plaintiff below) sued appellant (defendant below) for damages for breach of contract to deliver cattle, including $3,000 advanced upon the purchase price.   Appellant, in his answer, denied the alleged breach, and by way of counterclaim sought damages for an alleged breach of appellee's contract to receive the cattle.   Appellee recovered judgment for $3,000, the amount of the advanced payment.

The parties made a written contract July 1, 1922, for a sale by appellant to appellee of about 1,400 heifer and steer calves ranging in appellant's pasture in Cimarron County, Okla., to be delivered f. o. b. cars "all in good shipping condition, free from taxes, incumbrances, or liens, with all necessary certificate of inspection at Perico, Texas, any time between the 1st day of July, 1922, and 1st day of November, 1922, or as soon as cars can be obtained in which to ship said cattle."   Appellant agreed "to round up and throw together at said pasture about four days prior to delivery of said cattle about 1,400 head, exclusive of big jaws, blinds, sway-back, stags, cripples, locoed, or cattle in anyway diseased or unmerchantable," with the privilege to appellee "of cutting back and rejecting 20 per cent of said cattle."   Appellant further agreed "to cut out and deliver to point of delivery not more than one-half of said calves with their mothers at option of party of second part" (appellee).

Appellee did not request delivery of the cattle under this contract until about the second week in September,

from which time on appellant made reasonable efforts
to obtain the necessary cars for their shipment from
Perico, Texas, but was unable to obtain such cars until
December 2, 1922. In the meantime, because of such
inability to obtain cars, the parties, on November 1,
1922, reached an agreement that appellant might de-
liver the steer calves at Perico, regardless of cars, and
on November 3d further agreed that the heifer calves
would be received at Clayton, N. M., at any time cars
could be obtained at that point. Appellant, having
learned that cars were available at Clayton, notified
appellee to have his representative at appellant's ranch
on November 6th to make the cut preparatory to re-
ceiving delivery of the calves. Appellee's representa-
tive was present at the time and place specified, and
demanded of appellant's foreman that the mothers of
the heifer calves (about one-half the calves sold) be
driven with them to Clayton. The foreman, having no
instructions so to do, replied that it would be necessary
to take that matter up with Mr. Otto, whereupon ap-
pellee's representative and the foreman went to Clay-
ton to confer with John Otto, appellant's son and
manager, who represented appellant in the making of
the contract and throughout the transaction. Mr. Otto,
on being advised of the demand, expressed himself as
unwilling to comply with it, and then advised appel-
lee's representative that in any event he would be un-
able to deliver the calves that day, because he had
learned that the herd had scab, and that the calves
must be dipped before delivery could be made. Appel-
lee's representative then advised Mr. Otto that he
would have to see the appellee before he could say
what would be done. About a week and a half later
appellee advised Mr. Otto "that, in view of the fact
that the cattle had the scab, they could not accept
them." Appellant proceeded to have the calves
dipped, and obtained an inspection certificate, by vir-
tue of which at least such of the calves as were not
actually afflicted with the disease could have been
shipped to market. He then notified appellee by wire,

November 27th, that he stood ready to comply with the contract of July 1st; that the calves would be rounded up and ready for cut November 29th, and asked that appellee's representative be present the morning of that date.

In the foregoing statement of facts, we have not confined ourselves to the court's findings, but have included a number of facts which the court expressly refused to find; our endeavor being to state the case most favorably to the appellant.

The judgment was rendered upon the theory of a breach of the contract by appellant; the court holding the view that appellant was unable, on account of the diseased condition of the cattle, to deliver them at the time agreed upon, or at any time thereafter up to the trial of the case. It is appellant's theory that appellee breached the contract by demanding that the mothers of the heifer calves be driven with them to Clayton, and again breached the contract by refusing appellant's tender, made November 27, 1922, of delivery of both the steer and the heifer calves at Perico, according to the original contract.

Appellant's argument is stated thus:

"The court fell into the error that, because the cattle had to be dipped before an inspection certificate could be furnished, that therefore Christian Otto was unable to deliver these cattle at the time they were demanded. Such, however, is not the case, for the reason that, if demand were made under the terms of the original contract, in that contract it is specified that Mr. Otto did not have to deliver the cattle until he could obtain cars for shipment at Perico, Tex. If, on the other hand, the plaintiff stands upon the modifications of the original contract, whereby the steers were to be delivered at Perico, Texas, and the heifers at Clayton, the record shows that Bonner attempted to impose a further condition as to the delivery of the heifers to which Mr. Otto never agreed, to-wit, that the mothers of the heifers be delivered from Mr. Otto's ranch in Oklahoma, with the heifer calves to the railroad at Clayton.

"The record further shows that Mr. Otto made tender of performance in accordance with his written contract as soon as he could obtain cars, and that such performance was refused by the plaintiff, solely on the grounds that the calves had become infected with the scab.

"We do not deem it necessary to cite to the court authorities upon the proposition that Bonner, and not Otto, breached the contract, as a careful examination of the record will show that that is the only conclusion which can be drawn from the facts."

In arguing that the demand that the mothers be driven to Clayton constituted a breach of the contract, appellant necessarily assumes that the written contract did not justify such demand. There would seem to be room for the contention that such demand was warranted under the contract. However that may be, we are satisfied that appellee cannot be convicted of a breach of the contract because of his demand. It is true the parties seemed to disagree upon this point, and neither is shown ever to have receded from his position; but at the very time of disagreement appellant announced the existence of an insurmountable obstacle to his performance of the contract in its modified form. Thereafter the difference regarding the mothers was unimportant. It is by no means a necessary inference from the evidence that, regardless of the infection of the cattle, the sale would have been defeated because of the disagreement about driving the mothers to Clayton.

In arguing that appellee breached the contract by refusing the tender of November 27th, appellant must assume that, after having procured a modification of the written contract as to the time and place of delivery, and after having been unable to deliver at such time and place, he could thereafter revert to the original contract as to time and place of delivery, and put appellee in default for failure to accept delivery under its terms. We cannot accede to the correctness of this assumption. Having thus given appellant the widest latitude, we are unable to find anything in the record upon which to base a reversal of the judgment.

Appellee has raised a procedural question by a motion to dismiss the appeal for failure to serve him with a copy of the assignments of error filed, and for failure to copy in the brief the assignments of error as filed. On this point, see section 22, c. 43, Laws of 1917; Pal-

mer v. Allen, 18 N. M. 237, 135 P. 1173; Carter v. Coury, 31 N. M. 108, 242 P. 331. Appellee's motion, however, is not supported by a separate brief, as required by section 2, rule 10, of this court; his argument on the motion being combined and included with his brief on the merits. Doubtful, therefore, of appellee's right to insist upon his motion, we have preferred to consider the case upon its merits.

Finding no reversible error in the judgment, it must be affirmed, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.